UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| VINCENT S. PHILLIPS, | ) | 1:09-cv-01572 LJO MJS HC |
| | ) | |
| Petitioner, | ) | FINDINGS AND RECOMMENDATION |
| | ) | REGARDING PETITION FOR WRIT OF |
| v. | ) | HABEAS CORPUS |
| | ) | |
| M. MARTEL, Warden, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Respondent, M. Martel, warden of Mule Creek State Prison, is represented by Carlos A. Martinez, of the Office of the California Attorney General.

## I.    PROCEDURAL BACKGROUND

Petitioner is currently in the custody of the California Department of Corrections pursuant to a judgment of the Superior Court of California, County of Fresno, following his conviction by jury trial on May 20, 2005, for committing a forcible lewd act on a child under the age of fourteen and felony annoying or molesting a child. (1st Am. Pet., ECF No. 10, at 1.) The trial court also found true allegations that Petitioner had suffered prior serious felony convictions which qualified as "strikes" under California's "Three Strikes" law. (1st Am. Pet.) On June 30, 2005, Petitioner was sentenced to serve a term of sixty-seven (67) years to life in state prison. (Lod. Doc. 1, Clerk's Tr. at 450-53.)

On January 31, 2007, the California Court of Appeal affirmed the judgment. (Answer, Ex. A.) And on April 11, 2007, the California Supreme Court denied Petitioner's Petition for

1   Review. (Lodged Doc. 5.)

2       On March 6, 2008, Petitioner filed a habeas petition in the Fresno County Superior

3   Court, which the court denied on April 7, 2008. (Lodged Doc. 6.) On May 9, 2008, Petitioner

4   filed a habeas petition in the California Court of Appeal, which that court denied on November

5   21, 2008. (Lodged. Doc. 7.) Finally, on February 2, 2009, Petitioner filed a habeas petition in

6   the California Supreme Court, and that court denied on July 8, 2009. (Lodged Doc. 8.)

7       On August 26, 2009, Petitioner filed the instant federal habeas petition. (Pet.)

8   Petitioner filed a first amended petition, the operative petition in this matter, on September 16,

9   2009. (1st Am. Pet., ECF No. 10.)

10      Petitioner raises twenty (20) grounds for relief, listed as follows:[1]

11      (i) Claim I: Petitioner's right to due process was violated by allowing the prosecutor to

12  introduce evidence of prior acts.

13      (ii) Claim II: Petitioner's due process was violated by jury instructions that permitted the

14  jury to find Petitioner guilty by proof less than beyond a reasonable doubt.

15      (iii) Claim III: Ineffective assistance of counsel for failing to object to inadmissible

16  hearsay evidence.

17      (iv) Claim IV: Ineffective assistance of counsel in forcing Petitioner to testify at trial.

18      (v) Claim 1: Ineffective assistance of counsel for failing to conduct a reasonable

19  investigation.

20      (vi) Claim 2: Ineffective assistance of counsel based on counsel's conflict of interest.

21      (vii) Claim 3: Ineffective assistance of counsel for failing to obtain witnesses critical to

22  the defense.

23      (viii) Claim 4: Ineffective assistance of counsel under United States v. Cronic, 466 U.S.

24  648 (1984).

25      (ix) Claim 5: Ineffective assistance of appellate counsel.

26  ———————————————

27      [1] Petitioner includes the four claims from his direct appeal and the sixteen claims from his state habeas
    petition in the present matter. To maintain consistent numbering, like the parties, the court shall refer to the claims
    from the direct appeal by Roman Numeral (i.e. claims I through III) and the claims  from his state habeas petition
28  by number (i.e. claims 1 though 16).

1  (x) Claim 6: Illegal search and seizure.

2  (xi) Claim 7: Outrageous government conduct.

3  (xii) Claim 8: Failure of the prosecution to disclose favorable evidence under Brady v.

4  Maryland, 373 U.S. 83 (1963).

5  (xiii) Claim 9: Prosecutorial misconduct.

6  (xiv) Claim 10: Prosecutorial misrepresentation.

7  (xv) Claim 11: Prosecutor's use of perjured testimony.

8  (xvi) Claim 12: Judicial bias.

9  (xvii) Claim 13: Restricted cross-examination.

10  (xviii) Claim 14: Restriction of defense evidence.

11  (xix) Claim 15: Lack of proof beyond a reasonable doubt.

12  (xx) Claim 16: Use of false evidence.

13  Respondent filed an answer to the first amended petition on August 10, 2010, and

14  Petitioner filed a traverse on November 29, 2010. (Answer & Traverse, ECF Nos. 24, 30.)

15  **II.    FACTUAL BACKGROUND**[2]

16  Kayla first met Phillips when she and her father were at a McDonald's in
   late 2003. Phillips told Kayla that he knew her mother from his work at the
17  church. Later, when Kayla asked her mother about Phillips, her mother denied
   knowing him. However, Phillips got to know Kayla and her family more when he
18  delivered their house. Because Phillips said he was a "church guy,"
   Kayla's mother let Phillips take Kayla, then 13, to a lake. Phillips drove Kayla
19  and her girlfriend, Victoria, to a lake on two occasions. The first time, nothing
   inappropriate happened. However, Kayla was uncomfortable with what
20  happened during the second trip to the lake.

21  During that second trip, Phillips did not do anything inappropriate to Kayla
   on the way to the lake. While they were at the lake, Phillips gave Kayla and
22  Victoria "Smirnoff", and took pictures of the girls in their swimsuits at the lake.
   Phillips told the girls that he would take the photographs to Target and put them
23  in the newspapers so people would buy their swimsuits. He directed the girls to
   "show some skin" to help sell the swimsuits. Afterwards, they drove back to
24  Phillips' trailer. On the way back, Kayla was sitting in the front passenger seat
   while Victoria sat in the back. While driving, Phillips rubbed Kayla's stomach,
25  touched her thigh and then touched her "private part" in the front of her swimsuit.
   When they reached Phillips' trailer, he directed the girls to shower because they
26  were dirty. Because the girls thought that a camera was pointed at the shower,

27  ────────────────

28  [2]The factual background is taken from the opinion of the state appellate court and is presumed correct.
   28 U.S.C. § 2254(e)(1).

1    Kayla did not feel safe and only pretended to take a shower.

2         Kayla reported Phillips' conduct to a police officer at her school and a
3    warrant was executed to search Phillips' trailer home. During a search of the
     trailer home on October 23, 2003, police officers found photographs of
4    numerous children and pornographic magazines and videotapes. Eight
     photographs depicted a little boy, subsequently identified as L.J., naked in a
5    bathtub.

6         Phillips had met L.J. during the summer of 2002, while delivering bread
     for the Cornerstone Church to the motel where L.J. and his parents and older
7    sister A. resided. L.J.'s family did not have much money and Phillips drove L.J.'s
     mother to the grocery store and to the laundromat. Phillips helped the family buy
8    Christmas and birthday presents. He lived across the street and down the road,
     within walking distance of the motel. Phillips would pay L.J. and A. to do chores
9    for him.

10        On five or six occasions, L.J. accompanied Phillips in his big rig on trips
     to San Francisco, where Phillips delivered hazardous materials. On these
11   occasions, L.J. would sleep with Phillips in the small bed in the compartment
     behind the truck's cab. L.J. would lay on his side in front of Phillips. L.J. would
12   feel a "wet type" thing on his back, and that woke him up. Sometimes it hurt
     when Phillips did this. L.J. did not tell anyone about these incidents until his
13   initial interview with a Fresno Police Detective who showed him the pictures that
     the police had seized from Phillips' trailer.

14   (Answer, Ex. A, at 2-6.)

15   **III.    DISCUSSION**

16       **A.    Jurisdiction**

17       Relief by way of a petition for writ of habeas corpus extends to a person in custody

18   pursuant to the judgment of a state court if the custody is in violation of the Constitution or

19   laws or treaties of the United States.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams

20   v. Taylor, 529 U.S. 362, 375 fn.7 (2000).  Petitioner asserts that he suffered violations of his

21   rights as guaranteed by the U.S. Constitution. In addition, the conviction challenged arises out

22   of the Fresno County Superior Court, which is located within the jurisdiction of this court.  28

23   U.S.C. § 2241(d); 2254(a). Accordingly, the Court has jurisdiction over the action.

24       **B.    Legal Standard of Review**

25       On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act

26   of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its

27   enactment.  Lindh v. Murphy, 521 U.S. 320, 326 (1997); Jeffries v. Wood, 114 F.3d 1484,

28   1499 (9th Cir. 1997). The instant petition was filed after the enactment of the AEDPA; thus,

U.S. District Court
E. D. California

1    it is governed by its provisions.

2        Under AEDPA, an application for a writ of habeas corpus by a person in custody under

3    a judgment of a state court may be granted only for violations of the Constitution or laws of the

4    United States. 28 U.S.C. § 2254(a); Williams v. Taylor, 529 U.S. at 375 n. 7 (2000). Federal

5    habeas corpus relief is available for any claim decided on the merits in state court proceedings

6    if the state court's adjudication of the claim:

7        (1) resulted in a decision that was contrary to, or involved an
         unreasonable application of, clearly established federal law, as
8        determined by the Supreme Court of the United States; or

9        (2) resulted in a decision that was based on an unreasonable
         determination of the facts in light of the evidence presented in the
10       State court proceeding.

11   28 U.S.C. § 2254(d).

12       1.    Contrary to or an Unreasonable Application of Federal Law

13       A state court decision is "contrary to" federal law if it "applies a rule that contradicts

14   governing law set forth in [Supreme Court] cases" or "confronts a set of facts that are

15   materially indistinguishable from" a Supreme Court case, yet reaches a different result."

16   Brown v. Payton, 544 U.S. 133,  141 (2005) citing Williams, 529 U.S. at 405-06. "AEDPA

17   does not require state and federal courts to wait for some nearly identical factual pattern

18   before a legal rule must be applied. . . . The statue recognizes . . . that even a general

19   standard may be applied in an unreasonable manner" Panetti v. Quarterman, 551 U.S. 930,

20   953 (2007) (citations and quotation marks omitted).  The "clearly established Federal law"

21   requirement "does not demand more than a 'principle' or 'general standard.'" Musladin v.

22   Lamarque, 555 F.3d 830, 839 (2009).  For a state decision to be an unreasonable application

23   of clearly established federal law under § 2254(d)(1), the Supreme Court's prior decisions

24   must provide a governing legal principle (or principles) to the issue before the state court.

25   Lockyer v. Andrade, 538 U.S. 63, 70-71 (2003).  A state court decision will involve an

26   "unreasonable application of" federal law only if it is "objectively unreasonable." Id. at 75-76,

27   quoting Williams, 529 U.S. at 409-10; Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002). In

28   Harrington v. Richter, the Court further stresses that "an unreasonable application of federal

law is different from an *incorrect* application of federal law." 131 S. Ct. 770, 785 (2011), (citing Williams, 529 U.S. at 410) (emphasis in original).  "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Id. at 786 (citing Yarborough v. Alvarado, 541 U.S. 653, 664 (2004)). Further, "[t]he more general the rule, the more leeway courts have in reading outcomes in case-by-case determinations." Id.; Renico v. Lett, 130 S. Ct. 1855, 1864 (2010). "It is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court." Knowles v. Mirzayance, 556 U.S. 111, 129 S. Ct. 1411, 1419 (2009), quoted by Richter, 131 S. Ct. at 786.

### 2.    Review of State Decisions

"Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the claim rest on the same grounds." See Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991).  This is referred to as the "look through" presumption.  Id. at 804; Plascencia v. Alameida, 467 F.3d 1190, 1198 (9th Cir. 2006). Determining whether a state court's decision resulted from an unreasonable legal or factual conclusion,"does not require that there be an opinion from the state court explaining the state court's reasoning." Harrington, 131 S. Ct. at 784-85. "Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." Id. ("This Court now holds and reconfirms that § 2254(d) does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'").

Harrington instructs that whether the state court decision is reasoned and explained, or merely a summary denial, the approach to evaluating unreasonableness under § 2254(d) is the same: "Under § 2254(d), a habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision; then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court." Id. at 786.  Thus, "even a strong

case for relief does not mean the state court's contrary conclusion was unreasonable." Id. (citing Lockyer v. Andrade, 538 U.S. at 75). AEDPA "preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents." Id. To put it yet another way:

> As a condition for obtaining habeas corpus relief from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

Id. at 786-87. The Court then explains the rationale for this rule, i.e., "that state courts are the principal forum for asserting constitutional challenges to state convictions." Id. at 787. It follows from this consideration that § 2254(d) "complements the exhaustion requirement and the doctrine of procedural bar to ensure that state proceedings are the central process, not just a preliminary step for later federal habeas proceedings." Id. (citing Wainwright v. Sykes, 433 U.S. 72, 90 (1977).

### 3.   Prejudicial Impact of Constitutional Error

The prejudicial impact of any constitutional error is assessed by asking whether the error had "a substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 623 (1993); see also Fry v. Pliler, 551 U.S. 112, 121-22 (2007) (holding that the Brecht standard applies whether or not the state court recognized the error and reviewed it for harmlessness). Some constitutional errors, however, do not require that the petitioner demonstrate prejudice. See Arizona v. Fulminante, 499 U.S. 279, 310 (1991); United States v. Cronic, 466 U.S. 648, 659 (1984). Furthermore, where a habeas petition governed by AEDPA alleges ineffective assistance of counsel under Strickland v. Washington, 466 U.S. 668 (1984), the Strickland prejudice standard is applied and courts do not engage in a separate analysis applying the Brecht standard. Avila v. Galaza, 297 F.3d 911, 918, n. 7 (2002); Musalin v. Lamarque, 555 F.3d at 834.

## IV.   REVIEW OF PETITION

### A.   Claim I - Wrongful Admission of Propensity Evidence

Petitioner claims the trial court committed prejudicial error and violated his due process

rights by permitting the prosecutor to introduce evidence of prior acts involving Katie C. pursuant to California Evidence Code § 1108. (1st Am. Pet. at 4, 7.)

This claim was presented on direct appeal to the California Court of Appeal where it was rejected in a reasoned decision. (See Answer, Ex. 1.) Petitioner then raised the claim to the California Supreme Court. (Lodged Doc. 5.) The California Supreme Court denied the claim without comment. (Id.) When the California Supreme Court's opinion is summary in nature, the Court must "look through" that decision to a court below that has issued a reasoned opinion. Ylst v. Nunnemaker, 501 U.S. 797, 804-05 (1991). In this case, the appellate court analyzed and rejected the claim as follows:

Phillips's first claim of error is that the trial court erred in admitting evidence of a prior sex offense pursuant to Evidence Code section 1108. The prosecution introduced evidence that Phillips molested Katie C. in 1992.

Katie was the prosecution's first witness. She testified that, in 1992, she was 10 years old, weighed less than 100 pounds, and was living in Mammoth Lakes. She was friends with Christine, Phillips's daughter.

One day, Phillips drove her, Christine, and Christine's two younger sisters, in his truck to some hot springs in Owens Valley. Although Christine had told Katie that they had a bathing suit for her, when they arrived at the springs, there were no bathing suits for any of the girls. Katie got undressed with the others, but wrapped herself in a towel. When she was approximately 37 feet from the water, Phillips pulled her towel off, so she ran and jumped into the water to hide herself. After awhile, she got up and retrieved her towel, but Phillips came after her. He put her over his shoulder and carried her towards some caves, during which her towel came off. She scratched or kicked at Phillips until he put her down. Then they all relaxed and hung out, and Phillips drank a lot of Jack Daniels whiskey.

Because Phillips had been drinking, Katie testified that she decided to drive them home. Still wrapped in a towel, she got into the front seat, where Phillips made her sit on his lap. As she steered the vehicle, Phillips touched her chest and right leg and touched her vaginal area under the towel, though he did not put his fingers inside her. She pushed Phillips away about 20 times.

Katie did not tell her mother about the incident because she was scared, but she told a DARE officer at school about two weeks later, in mid-November. On cross-examination, Katie testified that she was interviewed by Jody O'Neil, an investigator with the District Attorney's sexual assault unit in 1992. During the 1992 interview, she never told O'Neil that Phillips pulled her towel off and threw her over his shoulder while she scratched and kicked him, or that she chose to drive the vehicle because Phillips had been drinking, or that Phillips touched her vaginal area. Moreover, at that interview, Katie said that she was wearing pants at the time Phillips touched her in the vehicle, not a towel. Katie testified that she first mentioned the vaginal touching in 2004, when she spoke with O'Neil a second time. Katie spoke with O'Neil about eight times prior to trial.

Phillips was convicted of felony annoying or molesting a child as a result of this conduct, but the specifics of the conviction were not disclosed to the jury.

In a prosecution for a sexual offense, section 1108 permits evidence of the commission of another sexual offense provided that it is not inadmissible under section 352 (prejudicial effect of the evidence outweighs its probative value). "By reason of section 1108, trial courts may no longer deem 'propensity' evidence unduly prejudicial per se, but must engage in a careful weighing process under section 352. Rather than admit or exclude every sex offense a defendant commits, trial judges must consider such factors as its nature, relevance, and possible remoteness, the degree of certainty of its commission and the likelihood of confusing, misleading, or distracting the jurors from their main inquiry, its similarity to the charged offense, its likely prejudicial impact on the jurors, the burden on the defendant in defending against the uncharged offense, and the availability of less prejudicial alternatives to its outright admission, such as admitting some but not all of the defendant's other sex offenses, or excluding irrelevant though inflammatory details surrounding the offense." (People v. Falsetta (1999) 21 Cal.4th 903, 916-917.) We will not disturb a trial court's exercise of discretion under section 352 unless it is shown the trial court exercised it " 'in an arbitrary, capricious or patently absurd manner.' " (People v. Frye (1998) 18 Cal.4th 894, 948; accord, People v. Sanders (1995) 11 Cal.4th 475, 512.)

The court's ruling admitting the prior sex offenses was not an abuse of discretion. Phillips contends that the evidence of his prior sex offense was more prejudicial than probative. Specifically, the evidence relating to Katie was much more prejudicial and inflammatory than the current charges relating to Kayla. However, we do not agree that the evidence relating to Katie was so much more prejudicial that it outweighed its probative value. The evidence was very probative because, in both the prior instance involving Katie and in the current charged instance involving Kayla, the sex acts occurred during a trip to and from a lake with under-aged girls. The prejudicial impact of the evidence relating to Katie was lessened by certain discrepancies between Katie's testimony in 1992 and her current testimony. For example, the jury heard that Katie never told O'Neil in 1992 that Phillips pulled her towel off and threw her over his shoulder while she scratched and kicked him, or that she chose to drive the vehicle because Phillips had been drinking, or that Phillips touched her vaginal area. Thus, the trial court did not abuse its discretion in allowing the jury to consider the prior sex offense.

(Answer, Ex. A, at 4-7.)

As stated above, Petitioner claims the admission of evidence of prior acts of domestic violence violated his due process rights. Petitioner is only entitled to relief if he shows that in upholding the introduction of the propensity evidence the California Court of Appeal contradicted or unreasonably applied clearly established federal law, as determined by the Supreme Court of the United States. See 28 U.S.C. § 2254(d). In Estelle v. McGuire, 502 U.S. 62, 75 n. 5 (1991), the Supreme Court expressly refused to determine whether the introduction of prior crimes evidence to show propensity to commit a crime would violate the Due Process

1  Clause. Id. ("Because we need not reach the issue, we express no opinion on whether a state

2  law would violate the Due Process Clause if it permitted the use of 'prior crimes' evidence to

3  show propensity to commit a charged crime."); see also Alberni v. McDaniel, 458 F.3d 860,

4  866 (9th Cir. 2006) ("Estelle expressly left this issue an 'open question'"). Because the

5  Supreme Court has specifically declined to address whether the introduction of propensity

6  evidence violates due process, Petitioner lacks the clearly established federal law necessary

7  to support his claims. Id.; see also Mejia v. Garcia, 534 F.3d 1036, 1046-47 (9th Cir. 2008)

8  (relying on Estelle and Alberni and concluding that the introduction of propensity evidence

9  under California Evidence Code § 1108 does not provide a basis for federal habeas relief,

10  even where the propensity evidence relates to an uncharged crime); Holley v. Yarborough,

11  568 F.3d 1091, 1101 (9th Cir. 2009) (The Supreme Court "has not yet made a clear ruling that

12  admission of irrelevant or overtly prejudicial evidence constitutes a due process violation

13  sufficient to warrant issuance of the writ."). Accordingly, Petitioner is not entitled to relief with

14  regard to this claim.

15  **B.   Claim II - Instructional Error**

16  Petitioner next contends that the trial court "committed reversible error by instructing

17  the jury on prior acts evidence pursuant to CALJIC No. 2.50.01, which permitted the jury to

18  find … [him] guilty by proof less than beyond a reasonable doubt." (1st Am. Pet. at 7.)

19  This claim was presented on direct appeal to the California Court of Appeal where it

20  was rejected in a reasoned decision. (See Answer, Ex. 1.) Petitioner then raised the claim to

21  the California Supreme Court. (Lodged Doc. 5.) The appellate court analyzed and rejected the

22  claim as follows:

23      Phillips next complains that he was prejudiced by the court instructing the
   jury that it could consider the evidence of Phillips's prior sex offenses to show

24  propensity to commit sexual offenses, pursuant to CALJIC No. 2.50.01 (2002
   rev.).FN2 He contends that this instruction improperly allowed the jury to convict

25  him on evidence of prior crimes that were proven by a preponderance of the
   evidence, and thus violated the due process clause of the California and United

26  States Constitutions.

27      FN2. The trial court instructed the jury pursuant to CALJIC No. 2.50 .01 (2002
   rev.) as follows:

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

"Evidence has been introduced for the purpose of showing that the defendant engaged in a sexual offense other than that charged in the case. [¶] 'Sexual offense' means a crime under the laws of a state or of the United States that involves any of the following: [¶] A. Any conduct made criminal by Penal Code section 288(a). The elements of this crime are set forth elsewhere in this instruction. [¶] B. Contact, without consent, between any part of the defendant's body and the genitals of another person. [¶] If you find that the defendant committed a prior sexual offense, you may, but are not required to, infer that the defendant had a disposition to commit sexual offenses. If you find that the defendant had this disposition, you may, but are not required to, infer that he was likely to commit and did commit the crime or crimes of which he is accused. [¶] However, if you find by a preponderance of the evidence that the defendant committed a prior sexual offense, that is not sufficient by itself to prove beyond a reasonable doubt that he committed the charged crimes. If you determine an inference properly can be drawn from this evidence, this inference is simply one item for you to consider, along with all the other evidence, in determining whether the defendant has been proved guilty beyond a reasonable doubt of the charged crime. [¶] Unless you are otherwise instructed, you must not consider this evidence for any other purpose."

The California Supreme Court has rejected this contention. In People v. Reliford (2003) 29 Cal.4th 1007, the Court proclaimed that "the 1999 version of CALJIC No. 2.50.01 correctly states the law." (Id. at p. 1009.) The Court rejected any suggestion the instruction was likely to mislead the jury regarding the prosecution's burden of proof. (Id. at p. 1015.) The Court also rejected an argument that the instruction was too complicated for jurors to apply. (Id. at p. 1016.)

The Reliford court noted that the 2002 revised version of the instruction instructs the jury "that the inference they may draw from prior sexual offenses is simply one item to consider, along with all other evidence, in determining whether the defendant has been proved guilty beyond a reasonable doubt of the charged crime." (People v. Reliford, supra, 29 Cal.4th at p. 1015.) The court referred to this sentence as "an improvement," explaining that it "provides additional guidance on the permissible use of the other-acts evidence and reminds the jury of the standard of proof for a conviction of the charged offenses." (Id. at p. 1016.) However, the court concluded that "the constitutionality of the instruction does not depend on this sentence." (Id. at p. 1015, fn. omitted.)

Here, the trial court used the 2002 revised version of CALJIC No. 2.50.01 which was approved by the Supreme Court in Reliford. We are compelled to follow Reliford and reject appellant's claim that CALJIC NO. 2.50.01 violates due process. (Auto Equity Sales, Inc. v. Superior Court (1962) 57 Cal.2d 450, 455.)

(Answer, Ex. A, at 7-8.)

The Due Process Clause of the Fourteenth Amendment requires the prosecution to prove every element charged in a criminal offense beyond a reasonable doubt. See In re Winship, 397 U.S. 358, 364 (1970). If the jury is not properly instructed that a defendant is presumed innocent until proven guilty beyond a reasonable doubt, the defendant has been

1    deprived of due process. See Middleton v. McNeil, 541 U.S. 433, 437 (2004); Taylor v.

2    Kentucky, 436 U.S. 478, 485-86 (1978). Any jury instruction that "reduce[s] the level of proof

3    necessary for the Government to carry its burden . . . is plainly inconsistent with the

4    constitutionally rooted presumption of innocence." Cool v. United States, 409 U.S. 100, 104

5    (1972).

6           Although the Constitution does not require jury instructions to contain any specific

7    language, the instructions must convey both that a defendant is presumed innocent until

8    proven guilty and that he may only be convicted upon a showing of proof beyond a reasonable

9    doubt. See Victor v. Nebraska, 511 U.S. 1, 5 (1994). "[T]he essential connection to a 'beyond

10   a reasonable doubt' factual finding cannot be made where the instructional error consists of

11   a misdescription of the burden of proof, which vitiates *all* the jury's findings." Sullivan v.

12   Louisiana, 508 U.S. 275, 279-81 (1993) (emphasis in original). Where such an error exists,

13   it is considered structural and thus is not subject to harmless error review. See id. at 280-82;

14   but see Byrd v. Lewis, 566 F.3d 855, 865-66 (9th Cir. 2009) (recognizing that after Hedgpeth

15   v. Pulido, 555 U.S. 57 (2008), harmless error analysis applies to instructions that

16   impermissibly lower the burden of proof if there is an alternative way for the jury to find the

17   defendant guilty without relying on the unconstitutional instruction). However, if a jury

18   instruction is deemed "ambiguous," it will violate due process only when a reasonable

19   likelihood exists that the jury has applied the challenged instruction in a manner that violates

20   the Constitution. Estelle, 502 U.S. at 72. Any challenged instruction must be considered in light

21   of the full set of jury instructions and the trial record as a whole. See Cupp v. Naughten, 414

22   U.S. 141 (1973).

23          In Gibson v. Ortiz, 387 F.3d 812 (9th Cir. 2004)[3], the Ninth Circuit had the opportunity

24   to address the constitutionality of the former versions of the instructions given at Petitioner's

25   trial. The Ninth Circuit determined that the instructions allowed the defendant in Gibson to be

26   convicted by a preponderance of the evidence, rather than by beyond a reasonable doubt.

27

28          [3] Overruled on other grounds by Lewis, 566 F.3d at 866.

<u>Gibson</u>, 387 F.3d at 822. In <u>Gibson</u> the court concluded the previous versions of the instructions, which allowed the jury to consider the evidence of past sexual misconduct if the prosecution proved them by a preponderance of the evidence, were not harmonized with the reasonable doubt standard to be convicted of the charged crime. <u>Id.</u> at 822-23 ("Because the trial court offered no explanation harmonizing the two burdens of proof discussed in the jury instructions, Gibson's jury was presented with two routes of conviction, one by a constitutionally sufficient standard and one by a constitutionally deficient one.").

In the instant case, the jury was instructed with an updated version of the instruction designed to comport with <u>Gibson</u>. <u>See</u> <u>People v. Falsetta</u>, 21 Cal.4th 903 (1999); <u>People v. Reliford</u>, 29 Cal.4th 1007 (2003). Added to the challenged instruction was the following statement:

> However, if you find by a preponderance of the evidence that the defendant committed a prior sexual offense, that is not sufficient by itself to prove beyond a reasonable doubt that he committed the charged crimes. If you determine an inference properly can be drawn from this evidence, this inference is simply one item for you to consider, along with all the other evidence, in determining whether the defendant has been proved guilty beyond a reasonable doubt of the charged crime.

The state court rejected Petitioner's claim. The court pointed out that the instruction given to Petitioner's jury materially tracks the 2002 version of CALJIC 2.50.01 instruction, in that both specify that the jury may not convict on the charged offense except on a finding of guilt beyond a reasonable doubt. Thus, according to the state court, Petitioner's claim was foreclosed by the decision of the California Supreme Court in <u>People v. Reliford</u>, which held that the 2002 version does not unconstitutionally lower the burden of proof.

The Ninth Circuit has recently ruled that a state court applying the analysis from the California Supreme Court's <u>Reliford</u> decision to uphold use of the 2002 version of CALJIC No. 2.50.01 does not act contrary to federal law. <u>Schultz v. Tilton</u>, 659 F.3d 941, 943-45 (9th Cir. 2011) (distinguishing <u>Gibson</u>, which found constitutional infirmity in use of prior version of CALJIC 2.50.01).

Accordingly the instruction does misstate the prosecution's burden of proof, and habeas relief is not warranted with respect to this claim.

**C.    Claims III and IV - Ineffective Assistance of Counsel**

Petitioner asserts that he was denied effective assistance of counsel based on trial counsel's failure to object to inadmissible hearsay evidence, and forcing Petitioner to testify at trial.

1.    Legal Standard for Ineffective Assistance of Counsel

The law governing ineffective assistance of counsel claims is clearly established for the purposes of the AEDPA deference standard set forth in 28 U.S.C. § 2254(d).  Canales v. Roe, 151 F.3d 1226, 1229 (9th Cir. 1998).  In a petition for writ of habeas corpus alleging ineffective assistance of counsel, the Court must consider two factors.  Strickland v. Washington, 466 U.S. 668 (1984); Lowry v. Lewis, 21 F.3d 344, 346 (9th Cir. 1994).  First, the petitioner must show that counsel's performance was deficient, requiring a showing that counsel made errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment.  Strickland, 466 U.S. at 687.  The petitioner must show that counsel's representation fell below an objective standard of reasonableness, and must identify counsel's alleged acts or omissions that were not the result of reasonable professional judgment considering the circumstances.  Id. at 688; United States v. Quintero-Barraza, 78 F.3d 1344, 1348 (9th Cir. 1995).  Judicial scrutiny of counsel's performance is highly deferential.  A court indulges a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.  Strickland, 466 U.S. at 687; see also, Harrington v. Richter, 131 S. Ct. 770 (2011).

Second, the petitioner must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result ... would have been different," Strickland, 466 U.S. at 694. Petitioner must show that counsel's errors were so egregious as to deprive defendant of a fair trial, one whose result is reliable.  Id. at 687.  The Court must evaluate whether the entire trial was fundamentally unfair or unreliable because of counsel's ineffectiveness.  Id.; Quintero-Barraza, 78 F.3d at 1348; United States v. Palomba, 31 F.3d 1456, 1461 (9th Cir. 1994).

A court need not determine whether counsel's performance was deficient before

examining the prejudice suffered by the petitioner as a result of the alleged deficiencies. Strickland, 466 U.S. at 697.  Since the defendant must affirmatively prove prejudice, any deficiency that does not result in prejudice must necessarily fail. However, there are certain instances which are legally presumed to result in prejudice, e.g., where there has been an actual or constructive denial of the assistance of counsel or where the State has interfered with counsel's assistance. Id. at 692; United States v. Cronic, 466 U.S., at 659, and n.25 (1984).

As the Supreme Court reaffirmed recently in Harrington v. Richter, meeting the standard for ineffective assistance of counsel in federal habeas is extremely difficult:

> The pivotal question is whether the state court's application of the Strickland standard was unreasonable. This is different from asking whether defense counsel's performance fell below Strickland's standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a Strickland claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), "an unreasonable application of federal law is different from an incorrect application of federal law." Williams, supra, at 410, 120 S. Ct. 1495, 146 L. Ed. 2d 389. A state court must be granted a deference and latitude that are not in operation when the case involves review under the Strickland standard itself.
>
> A state court's determination that a claim lacks merit precludes federal habeas relief so long as "fairminded jurists could disagree" on the correctness of the state court's decision. Yarborough v. Alvarado, 541 U.S. 652, 664, 124 S. Ct. 2140, 158 L. Ed. 2d 938 (2004). And as this Court has explained, "[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." Ibid. "[I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court." Knowles v. Mirzayance, 556 U.S. 111, 129 S. Ct. 1411, 1419, 173 L. Ed. 2d 251, 261 (2009) (internal quotation marks omitted).

Harrington v. Richter, 131 S. Ct. at 785-86.

"It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. at 786. "As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings." Id. "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in

1    existing law beyond any possibility for fairminded disagreement." Id. at 786-87.

2        Accordingly, even if Petitioner presents a strong case of ineffective assistance of

3    counsel,  this Court may only grant relief if no fairminded jurist could agree on the correctness

4    of the state court decision.

5            2.    Claim III - Failure to Object to Hearsay Testimony

6        As stated above, Petitioner claims that trial counsel was ineffective for failing to object

7    to inadmissible hearsay evidence at trial.

8            a.    Relevant State Court Decision

9        This claim was presented on direct appeal to the California Court of Appeal where it

10   was rejected in a reasoned decision. (See Answer, Ex. 1.) The appellate court analyzed and

11   rejected the claim as follows:

12           Finally, Phillips complains that his trial counsel provided ineffective
         assistance because the trial counsel did not object to the admission of certain
13       hearsay statements. In order to prevail on a claim for ineffective assistance of
         counsel, Phillips must make two showings. First, he must show that counsel's
14       representation fell below an objective standard for reasonableness under
         prevailing professional norms. (Strickland v. Washington (1984) 466 U.S. 668,
15       687-88; People v. Gray (2005) 37 Cal.4th 168, 206-207.) Second, Phillips must
         show that there is a reasonable probability that, but for counsel's unprofessional
16       errors, the result would have been more favorable to the defendant. (Strickland
         v. Washington, supra, 466 U.S. at p. 687; People v. Kelly (1992) 1 Cal.4th 495,
17       519-520.)

18           Furthermore, Phillips's claims implicate his trial counsel's trial tactics or
         strategic reasons for not making certain objections at trial. However, in this direct
19       appeal, there is no evidence in the record for why trial counsel did not object.
         "'In the usual case, where counsel's trial tactics or strategic reasons for
20       challenged decisions do not appear on the record, we will not find ineffective
         assistance of counsel on appeal unless there could be no conceivable reason
21       for counsel's acts or omissions.'" (People v. Jones (2003) 29 Cal.4th 1229,
         1254.)
22
             In this appeal, Phillips challenged the failure to object to seven instances
23       of admission of hearsay evidence. "'Hearsay evidence' is evidence of a
         statement made by a declarant on an occasion other than as a witness while
24       testifying at a current hearing or trial, that is offered at the current hearing or trial
         to prove the truth of the matter stated, either expressly or implied, in the
25       statement." (Evid.Code, § 1200, subd. (a).) Hearsay evidence is not admissible
         unless it falls within one of the exceptions provided by law. (Evid.Code, § 1200,
26       subd. (b).) Nevertheless, there may be valid reasons for why trial counsel may
         not object to hearsay evidence. In the seven instances cited by Phillips, we are
27       able to conceive of possible reasons for why trial counsel did not object to the
         admission of hearsay evidence.
28

The first instance cited by Phillips where trial counsel failed to object occurred when Kayla testified that she did not actually see Phillips touch Victoria,FN3 but that Victoria told Kayla that Phillips touched her. Defense counsel elicited this testimony from Kayla in the course of trying to get Kayla to clarify her story. It is conceivable that trial counsel did not object to the hearsay statement by Victoria because he wanted Kayla to testify to one account in order to show that her testimony was inconsistent with prior statements. Moreover, the prejudicial impact of the hearsay evidence regarding Victoria was lessened because Kayla testified that she did not see any actual touching. The jury also heard that Victoria told Jody O'Neil that she did not recall anything inappropriate happening to her.

FN3. Victoria could not be located by the prosecution or defense during trial preparation, and did not testify at trial.

The second instance occurred when Annette, Kayla's mother, testified that Kayla told her that Kayla tried to kill herself because she hated the way she felt, and began talking about the events involving Phillips after this purported suicide attempt. However, when asked whether the suicide had anything to do with Phillips, Annette answered "I do not know." Defense counsel had called Annette as a defense witness so that she could provide a foundation for certain letters that she wrote to help Phillips. Annette did not believe the charges relating to Kayla at the time she wrote the letters to help Phillips. On cross-examination by the prosecution, defense counsel objected five times and was overruled on four of those times before Annette testified about Kayla's statements. Defense counsel may not have objected because he may have thought that he could use the statements by the mother to exonerate his client. Trial counsel did argue in closing that Annette said "the suicide didn't have anything to do with the molest[ation.]"

Phillips also challenges three instances where trial counsel did not object to testimony by Fresno Police Detective R. Holquinn. Trial counsel had called Holquinn as a defense witness. On direct, Holquinn testified that he was called to Kayla's school to interview Kayla and Victoria about the incident at the lake. Holquinn testified that Victoria told him that Phillips rubbed and tickled her lower leg while she was in the back seat on the way to the river. On cross-examination, Holquinn testified that Victoria told him that Phillips gave her Smirnoff at the river, and that Phillips put her on his lap and tickled her. It is conceivable that trial counsel did not object to this testimony because he did not want to undermine Holquinn's credibility since he was able to elicit testimony from Holquinn relating to hearsay statements made by Kayla that trial counsel could use for impeachment.

Holquinn also testified that Kayla told him she saw Phillips grab Victoria, put her on his lap, and grind her butt against Phillips' groin. It is conceivable that trial counsel did not object to this testimony because he thought that it was admissible to as a prior consistent statement by Kayla.

Holquinn further testified that Kayla told him that Phillips had similarly rubbed or pressed his groin against the buttocks of another seven- or eight-year old girl named Misty, although Holquinn could not locate a person named Misty. It is conceivable that trial counsel did not object to this testimony because he thought the same evidence could be used to impeach Kayla, especially since Holquinn could not locate any person named Misty.

1
2
3
4
5
6
7

Phillips also argues that trial counsel should have objected to testimony by Jody O'Neil relating to her interview with Victoria at her home. O'Neil testified that Victoria said Kayla told her that Phillips touched her on the leg and she did not like it. Trial counsel had called O'Neil as a defense witness and elicited from her testimony that Victoria said she did not recall Phillips doing anything inappropriate to her and that she saw nothing inappropriate happen between Phillips and Kayla. The subsequent testimony relating to what Kayla told Victoria was elicited on crossexamination. It is conceivable that trial counsel did not object because he thought the hearsay statements by Kayla were admissible as prior consistent statements since they were consistent with Kayla's current testimony at trial. Moreover, trial counsel may not have objected because he wanted to preserve O'Neil's credibility given that he was able to elicit hearsay testimony that Victoria saw nothing inappropriate happen between Phillips and Kayla.

8
9
10
11
12
13
14
15

The final instance challenged by Phillips involves statements allegedly made by L.J.'s school teacher. Fresno Police Detective K. Kobashi testified that in February 2004, he interviewed the teacher, who reported that L.J.'s personality had changed and he had become withdrawn. Defense counsel had called Kobashi as a defense witness and had elicited testimony that when Kobashi interviewed L.J., L.J. had not mentioned any sexual contact between him and Phillips. During direct, Kobashi also testified that the school teacher had told Kobashi that she had concerns about how L.J. was acting. Kobashi had added his notes about the interviews to page 3 of his police report. On cross-examination, the prosecution elicited the challenged testimony, where the teacher explained that L.J. had become withdrawn. It is conceivable that defense counsel did not object because he thought objecting would undermine Kobashi's credibility, and he wanted to use Kobashi's testimony that L.J. had not mentioned any sexual contact when he was interviewed by Kobashi.

16
17

Therefore, because there were conceivable reasons why trial counsel did not object to the admission of the alleged hearsay statements, we do not find ineffective assistance of counsel.

18   (Answer, Ex. A, at 8-12.)

19   Petitioner then filed a petition for review which was denied by the California Supreme

20   Court. The California Supreme Court is therefore presumed to have denied the claim for the

21   same reasons stated by the superior court. Ylst, 501 U.S. at 803.

22              b.    Analysis

23   Petitioner's first claim of ineffective assistance of counsel is that counsel failed to object

24   to at least seven instances of inadmissible hearsay at trial. Regardless of inadmissible

25   hearsay, the prosecution presented significant admissible evidence of Petitioner's guilt. At trial,

26   Katie testified as to Petitioner's inappropriate touching of her in the Mammoth Lakes area in

27   1992. (Rept'rs. Tr. ("RT") at 1514-1561.) Kayla then testified as to inappropriate touching and

28   conduct when taken to a lake by Petitioner. (RT1562-1623.) Next, L.J. also testified as to

1    Petitioner touching his private parts to his back and bottom while accompanying Petitioner on

2    overnight trucking trips. (RT 1693-94.) The evidence presented by the prosecution based on

3    the direct testimony of the witnesses strongly pointed towards Petitioner's guilt.

4          As described in the state court opinion, Petitioner challenges trial counsel's failure to

5    object to hearsay statements regarding: 1) Kayla testifying that Victoria told Kayla that Phillips

6    touched her, 2) Annette, Kayla's mother, testifying that Kayla told her that Kayla attempted

7    suicide in light of the events with Petitioner, 3) three separate statements by Fresno Police

8    Detective R. Holquinn, a defense witness, who testified that Victoria told him that Petitioner

9    inappropriately touched her and gave her alcohol while at the river, 4) statements from

10   Holquinn that Kayla told him she saw Petitioner grab Victoria, put her on his lap, and grind her

11   butt against Petitioner's groin, 5) statements from Holquinn that Kayla told him that Petitioner

12   had similarly rubbed or pressed his groin against the buttocks of another seven- or eight-year

13   old girl named Misty; 6) testimony from Jody O'Neil who testified that Victoria said Kayla told

14   her that Petitioner touched Kayla on the leg and she did not like it, and 7) statements from

15   Fresno Police Detective K. Kobashi who testified that L.J.'s school teacher reported that L.J.'s

16   personality had changed and he had become withdrawn after the incident.

17         The state court reviewed the above instances of alleged ineffective assistance of

18   counsel for allowing hearsay statements under relevant state law. Under California law, "where

19   counsel's trial tactics or strategic reasons for challenged decisions do not appear on the

20   record, we will not find ineffective assistance of counsel on appeal unless there could be no

21   conceivable reason for counsel's acts or omissions." People v. Jones, 29 Cal. 4th 1229, 1254

22   (2003). Therefore the state court determined there were conceivable reasons to allow the

23   hearsay statements and denied the claim. The Court need not determine if, just because there

24   were conceivable reasons for not objecting, that counsel's representation did not fall below an

25   objective standard of reasonableness. Harrington, 131 S. Ct. at 787-88 ("The question is

26   whether there is any reasonable argument that counsel satisfied Strickland's deferential

27   standard.") Instead the Court may first determine if Petitioner demonstrated a reasonable

28   probability that, but for counsel's unprofessional errors, the result of the proceeding would

1  have been different. Id.

2        In Petitioner's case, three of the victims presented by the prosecution provided

3  testimony evidence of Petitioner's criminal conduct. The victims' testimony provided substantial

4  evidence of Petitioner's guilt. Additionally, another victim, Victoria, did not testify. However

5  Kayla testified that she observed Petitioner hold Victoria down and move her side to side on

6  his lap. (RT 1572.) Much of the hearsay evidence that was allowed was to support claims of

7  Petitioner's conduct against Victoria. Even if those statements were properly objected to and

8  not admitted, Kayla's admissible testimony would have provided strong support in itself of

9  Petitioner's conduct towards Victoria. In addition, hearsay statements were made by Kayla's

10  mother that Kayla's suicide attempt was predicated by her emotional response to the events.

11  However, the state court found that the statement was mitigated when Kayla's mother

12  admitted that she did not know if Petitioner's conduct was the cause of the suicide attempt.

13  (Answer, Ex. A, at 8-12.)

14        In light of the strong testimony of Katie, Kayla, and L.J., Petitioner has not made a

15  sufficient showing of prejudice that in light of the admission of the hearsay statements, there

16  was a reasonable probably that the result of the proceeding would be different. It is not

17  reasonable to believe that a jury, even if not presented the hearsay statements would made

18  a different decision. The state court's rejection of the claim was neither contrary to nor an

19  unreasonable application of Strickland. See Harrington, 131 S. Ct. at 785-86. Petitioner's

20  claim of ineffective assistance of counsel is without merit.

21              3.     Claim IV - Counsel's Advise that Petitioner Testify

22        Petitioner claims that his attorney was ineffective based on his assertions that Petitioner

23  "had to testify" to tell the jury "his side of the case and because he couldn't subpoena

24  witnesses" who lived too far away. (1st. Am. Pet. at 8.) Petitioner does not provide further

25  reasoning as to why defense counsel's strategy to have Petitioner testify in his defense was

26  harmful and caused him undue prejudice at trial.

27                    a.     Exhaustion and Procedural Default

28        Respondent asserts that Petitioner did not present this claim to the California Supreme

Court and therefore is not exhausted. Habeas petitioners who wish to challenge either their state court conviction or the length of their confinement in state prison, must first exhaust state judicial remedies. 28 U.S.C. § 2254(b), (c); Granberry v. Greer, 481 U.S. 129, 133-34 (1987). To exhaust state judicial remedies, a California state prisoner must present the California Supreme Court with a fair opportunity to rule on the merits of every issue raised in his or her federal habeas petition. 28 U.S.C. § 2254(b), (c); Granberry, 481 U.S. at 133-34; see also Duncan v. Henry, 513 U.S. 364, 365 (1995). If the claim was not presented to the state's highest court on direct appeal, state collateral remedies must be exhausted. Reiger v. Christensen, 789 F.2d 1425, 1427 (9th Cir. 1986).

However, even where a claim has not been presented to the state's highest court if a petitioner no longer has state court remedies available to him, he has satisfied the technical requirements of exhaustion. Smith v. Baldwin, 510 F.3d 1127, 1139 (9th Cir. 2007) (en banc) ("The Supreme Court has noted that a habeas petitioner who has defaulted his federal claims in state court meets the technical requirements for exhaustion; there are no state remedies any longer 'available' to him."), quoting Coleman v. Thompson, 501 U.S. 722, 732 (1991); Cassett v. Stewart, 406 F.3d 614, 621 n.5 (9th Cir. 2005); see also 28 U.S.C. § 2254(c) ("An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.") In such a situation the claim would likely be procedurally defaulted in this Court. Coleman, 501 U.S. at 735 n.1 (holding that a procedural default arises when a petitioner has "failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred").

Here, Petitioner raises a claim of ineffective assistance of counsel based on trial counsel's recommendation that Petitioner testify in his defense. As described in the discussion of claim III above, Petitioner raised, on direct appeal, claims of ineffective assistance of counsel based on the failure of counsel to object to hearsay testimony. The fact that Petitioner presented other claims of ineffective assistance of counsel does not exhaust other ineffective

1   assistance of counsel claims. Moormann v. Schriro, 426 F.3d 1044, 1056 (9th Cir. 2005) ("This

2   does not mean, however, that a petitioner who presented any ineffective assistance of counsel

3   claim below can later add unrelated alleged instances of counsel's ineffectiveness to his claim.

4   Rather, this rule allows a petitioner who presented a particular claim, for example that counsel

5   was ineffective in presenting humanizing testimony at sentencing, to develop additional facts

6   supporting that particular claim.") (citations omitted). Petitioner has not presented the instant

7   ineffective assistance of counsel claim to the California Supreme Court.

8        However, based on California's rule barring untimely petitions for post-conviction relief,

9   which the United States Supreme Court has found to be clearly established and consistently

10  applied, Petitioner has satisfied the technical requirement for exhaustion because he no longer

11  has state court remedies available with respect to his ineffective assistance of counsel claim.

12  See Walker v. Martin, 131 S.Ct. 1120, 1125-31 (2011) (holding that California's timeliness

13  requirement providing that a prisoner must seek habeas relief without "substantial delay" as

14  "measured from the time the petitioner or counsel knew, or should reasonably have known,

15  of the information offered in support of the claim and the legal basis for the claim," is clearly

16  established and consistently applied), citing In re Robbins, 18 Cal.4th 770, 805n(1998)

17  (holding that a habeas claim "that is substantially delayed" will not be considered unless "the

18  petitioner can demonstrate 'good cause' for the delay.") The United States Supreme Court has

19  stated that federal habeas courts should not treat California's timeliness rules as differing

20  significantly from other states which consider petitions untimely after unexplained delays of

21  thirty or sixty days. Evans v. Chavis, 546 U.S 189, 199-201 (2006), citing Carey v. Saffold, 536

22  U.S. 214, 219 (2002).

23       Based on Petitioner's unexplained and continuing delay in presenting the claim, it

24  appears that he has no available state court remedies remaining for the claims, which arose

25  during his trial and appellate proceedings, and he has therefore met the technical

26  requirements of exhaustion as to these claims. Smith, 510 F.3d at 1139 ; Coleman, 501 U.S.

27  at 735 n.1. Accordingly, Respondent's claim that the instant claim is not exhausted is without

28  merit.

1

b.      Relief From Procedural Default

2      Even though the claim is technically exhausted, the fact that it is technically exhausted

3 implies that it is procedurally defaulted. Over four years have passed since Petitioner filed his

4 direct appeal and the conviction became final. As a result of Petitioner's failure to present his

5 allegations to the state court, his Sixth Amendment ineffective assistance of counsel claim is

6 procedurally defaulted in this Court. See Coleman, 501 U.S. 722, 735 n.1 (1991) (holding that

7 a procedural default arises when "the court to which the petitioner would be required to

8 present his claims in order to meet the exhaustion requirement would now find the claims

9 procedurally barred."); see id. at 729-30 (a procedural default arises from a violation of a state

10 procedural rule which is independent of federal law, and which is clearly established and

11 consistently applied.); see Bennett v. Mueller, 322 F.3d 573, 581 (9th Cir. 2003) ("We

12 conclude that because the California untimeliness rule is not interwoven with federal law, it is

13 an independent state procedural ground."); see also Walker, 131 S.Ct. at 1125-31(holding that

14 California's timeliness requirement providing that a prisoner must seek habeas relief without

15 "substantial delay" as "measured from the time the petitioner or counsel knew, or should

16 reasonably have known, of the information offered in support of the claim and the legal basis

17 for the claim," is clearly established and consistently applied). This Court may still reach the

18 merits of the claim if Petitioner can demonstrate cause for his failure to timely present his

19 claim to the state courts and prejudice arising from the default, or if he can demonstrate that

20 a fundamental miscarriage of justice would result from the Court not reaching the merits of the

21 defaulted claim. Coleman, 501 U.S. at 750.

22

(1)      *Cause and Prejudice*

23      The cause prong can be satisfied if Petitioner demonstrates some "objective factor" that

24 precluded him from raising his claims in state court, such as interference by state officials or

25 constitutionally ineffective counsel. McCleskey v. Zant, 499 U.S. 467, 493-94 (1991). In

26 Edwards v. Carpenter, 529 U.S. 446 (2000), the Supreme Court stated:

27          Although we have not identified with precision exactly what constitutes
            "cause" to excuse a procedural default, we have acknowledged that in certain
28          circumstances counsel's ineffectiveness in failing properly to preserve the claim

1
2
3
4
5
6

> for review in state court will suffice. [Murray v. Carrier, 477 U.S. 478, 488-89 (1986)] Not just any deficiency in counsel's performance will do, however; the assistance must have been so ineffective as to violate the Federal Constitution. Ibid. In other words, ineffective assistance adequate to establish cause for the procedural default of some other constitutional claim is itself an independent constitutional claim. And we held in Carrier that the principles of comity and federalism that underlie our longstanding exhaustion doctrine. . . require that constitutional claim, like others, to be first raised in state court. "(A) claim of ineffective assistance," we said, generally must "be presented to the state courts as an independent claim before it may be used to establish cause for procedural default." Carrier, supra, at 489.

7    Edwards, 529 U.S. at 451-52.

8    Petitioner alleges that his appointed counsel rendered constitutionally ineffective

9    assistance by recommending that Petitioner testify in his own defense. Petitioner has not

10   explained any deficiency on the part of appellate counsel to present the claim to the state

11   courts. In addition, as set forth below in addressing the merits of Petitioner's claim, Petitioner

12   has failed to demonstrate that a federal constitutional violation arose as a result counsel's

13   recommendation that Petitioner testify. Because Petitioner has not provided a sufficient basis

14   for cause, and none is apparent in the record, the Court finds that Petitioner has not

15   established cause to excuse the procedural default. McCleskey, 499 U.S. at 493-94; Edwards,

16   529 U.S. at 451-52.

17   Even if he had shown good cause, Petitioner would still be required to demonstrate

18   prejudice. As discussed below, he is unable to do so.

19   In order to establish prejudice to overcome a procedural default, Petitioner must show

20   "not merely that the errors at his trial created a possibility of prejudice, but that they worked

21   to his actual and substantial disadvantage, infecting his entire trial with error of constitutional

22   dimensions." See United States v. Frady, 456 U.S. 152, 170 (1982) (discussing prejudice

23   where defendant failed to object to jury instructions in proceeding under 28 U.S.C. § 2255);

24   Schneider v. McDaniel, 674 F.3d 1144, 1153 (9th Cir. 2012). "Prejudice [to excuse a

25   procedural default] is actual harm resulting from the alleged error." Vickers v. Stewart, 144

26   F.3d 613, 617 (9th Cir. 1998).

27   Petitioner cannot demonstrate prejudice sufficient to excuse the default because he

28   cannot establish either deficient performance or prejudice under Strickland for the reasons

1  discussed below. The Court finds that counsel's recommendation that Petitioner testify did not

2  infect the trial with error of constitutional dimension. Thus, Petitioner cannot establish "actual

3  harm resulting from the alleged error" sufficient to excuse the default. Vickers, 144 F.3d at

4  617; Frady, 456 U.S. at 170.

5  (2)    <em>Fundamental Miscarriage of Justice</em>

6  As noted, Petitioner also can avoid a procedural default if he can demonstrate that a

7  fundamental miscarriage of justice would result from the default. The United States Supreme

8  Court has limited the "miscarriage of justice" exception to petitioners who can show that "a

9  constitutional violation has probably resulted in the conviction of one who is actually innocent."

10  Schlup v. Delo, 513 U.S. 298, 327 (1995). "In order to pass through Schlup's gateway, and

11  have an otherwise barred constitutional claim heard on the merits, a petitioner must show that,

12  in light of all the evidence, including evidence not introduced at trial, 'it is more likely than not

13  that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'" Majoy

14  v. Roe, 296 F.3d 770, 775-76 (9th Cir. 2002), quoting Schlup, 513 U.S. at 327. In applying this

15  standard, "A petitioner need not show that he is 'actually innocent' of the crime he was

16  convicted of committing; instead, he must show that '"a court cannot have confidence in the

17  outcome of the trial.'" Majoy, 296 F.3d at 776, quoting Carriger v. Stewart, 132 F.3d 463, 478

18  (9th Cir. 1987) (en banc), quoting Schlup, 513 U.S. at 316.

19  Here, Petitioner refutes the factual assertions of the victims, but has not presented any

20  credible evidence to undermine the factual assertions that form the basis of his convictions.

21  Without presenting reliable, credible evidence of his innocence, Petitioner has not made a

22  sufficient showing of actual innocence to serve as an equitable exception to procedural

23  default. Schlup, 513 U.S. at 324 ("To be credible, such a claim requires petitioner to support

24  his allegations of constitutional error with new reliable evidence -- whether it be exculpatory

25  scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was

26  not presented at trial. Because such evidence is obviously unavailable in the vast majority of

27  cases, claims of actual innocence are rarely successful.") Petitioner has not shown that it is

28  more likely than not that no reasonable juror would have found him guilty beyond a reasonable

1    doubt had counsel not recommended Petitioner to testify, or that the Court cannot have

2    confidence in the outcome of the trial due to the errors of counsel. Id. at 314-15.

3                          c.      Merits of Petitioner's Claim

4         Even if Petitioner had established a right to relief from his procedural default and were

5    allowed to proceed to the merits of this claim, he is not entitled to relief. Petitioner has not

6    shown that counsel's recommendation for Petitioner to testify on his behalf was ineffective

7    assistance of counsel. A tactical decision exercised by counsel deserves deference when

8    counsel makes an informed decision based on strategic trial considerations and the decision

9    appears reasonable under the circumstances. See Sanders v. Ratelle, 21 F.3d 1446, 1456

10   (9th Cir. 1994). On the other hand, "it cannot be permissible trial strategy, regardless of the

11   merits or otherwise, for counsel to override the ultimate decision of a defendant to testify

12   contrary to his advice." United States v. Mullins, 315 F.3d 449, 453 (9th Cir. 2002). This is so

13   because "a defendant in a criminal case has the right to take the witness stand and testify in

14   his or her own defense." Rock v. Arkansas, 483 U.S. 44, 49 (1987). The defendant may,

15   however, waive this right, either explicitly or implicitly. See United States v. Pino-Noriega, 189

16   F.3d 1089, 1094 (9th Cir. 1999). Such a waiver may be inferred from a defendant's failure to

17   testify at trial or to notify the trial court of his desire to testify. See id. at 1094-1095. "Although

18   the ultimate decision whether to testify rests with the defendant, he is presumed to assent to

19   his attorney's tactical decision not to testify," but he "can reject his attorney's tactical decision

20   by insisting on testifying, speaking to the court, or discharging his lawyer." United States v.

21   Joelson, 7 F.3d 174, 177 (9th Cir. 1993).

22        Petitioner has failed to demonstrate that counsel rendered prejudicially ineffective

23   assistance by advising him to testify on his own behalf. Counsel made a decision to advise

24   Petitioner to testify. Petitioner has not described how the decision was injurious to his defense

25   or otherwise shown it not to be a reasonable tactical choice. While Petitioner may now wish,

26   with the benefit of hindsight, that he had not testified at trial, it does not mean that counsel's

27   performance fell below fell below an objective standard of reasonableness. Because there is

28   a reasonable argument that counsel was not ineffective, Petitioner is not entitled to federal

1    habeas corpus relief on this claim.

2                    4.    Claims 1-16: Procedural Default

3         Respondent asserts that the claims set forth in Petitioner's state habeas petitions are

4    subject to procedural default. Petitioner brought sixteen claims in his state petition. In the last

5    reasoned decision, the Fresno County Superior Court denied all of the claims based on a state

6    procedural bar. Ylst, 501 U.S. at 803. The court addressed Petitioner's claims as follows:

7              Having considered the petition for writ of habeas corpus filed on March
            5, 2008, the court finds that petitioner has not stated a prima facie case for
8           relief.

9              Petitioner contends that he received ineffective assistance of counsel
            both at trial and on appeal, that the evidence used to convict him was obtained
10          through an illegal search and seizure, that he is the victim of "outrageous
            government misconduct", that the state failed to disclose evidence that was in
11          its possession to the defense, that there was prosecutorial misconduct,
            prosecutorial misrepresentation, and use of perjured testimony, and that the
12          court was guilty of judicial bias.

13             However, petitioner previously raised many similar claims, including a
            claim of ineffective assistance of counsel, in his direct appeal of his conviction.
14          (See People v. Vincent Scott Phillips (2007) Cal.App. Unpub. LEXIS 802.)
            Generally, issues that have been resolved on appeal or which could have been
15          resolved by a timely appeal will not be reconsidered on habeas corpus. (In re
            Clark (1993) 5 Cal..4th 750, 765-766.) Here, because petition has already raised
16          many of the same arguments on appeal that he now raises in his petition, his
            contentions are barred. Likewise, any arguments that he could have raised on
17          appeal but did not are also barred. This would include his claim of ineffective
            assistance of counsel since he has already raised this issue in his direct appeal.
18          (In re Clark, supra, at 765-766.)

19   (Lodged Doc. 6, Order.)

20        The case of In re Clark, 5 Cal.4th 750, 765-66 (1993) cited In re Dixon, 41 Cal.2d 756,

21   759 (1953) for the proposition that "the writ will not lie where the claimed errors could have

22   been, but were not, raised upon a timely appeal from a judgment of conviction." This is known

23   as the "Dixon rule." Fields v. Calderon, 125 F.3d 757, 762 (9th Cir. 1997); In re Dixon, 41

24   Cal.2d at 759.

25                    a.    Application to Claims of Ineffective Assistance of Counsel

26        First, Respondent correctly acknowledges that the Dixon rule should not apply to claims

27   of ineffective assistance of counsel  which are more appropriately raised on habeas corpus.

28   The California Supreme Court has "'repeatedly emphasized that a claim of ineffective

1   assistance is more appropriately decided in a habeas corpus proceeding.'" <u>People v. Jones</u>,

2   30 Cal. 4th 1084, 1105 (2003) (quoting <u>People v. Mendoza Tello</u>, 15 Cal. 4th 264, 266-67, 62

3   Cal. Rptr. 2d 437, 933 P.2d 1134 (1997)). In fact, the court has specified that the <u>Dixon</u> rule

4   should not be applied to a claim of ineffective assistance of trial counsel, even if the claim is

5   based solely upon the appellate record. <u>In re Robbins</u>, 18 Cal. 4th 770, 815 n.34 (1998). In

6   light of <u>Robbins</u>, the Court concludes that the superior court's citation of <u>In re Clark</u> was not

7   an adequate basis for denying Petitioner's ineffective assistance of counsel clam. <u>See</u> <u>Arenas</u>

8   <u>v. Adams</u>, 2011 U.S. Dist. LEXIS 152921 (C.D. Cal. Nov. 30, 2011) (holding that a claim of

9   ineffective assistance of counsel was not barred by the state court's citation of the <u>Dixon</u> rule).

10  Accordingly, the Court concludes that Petitioner's claims one through six, based on ineffective

11  assistance of counsel are not procedurally defaulted.

12              b.      Applicable Law

13  Respondent argues that Petitioner's claims seven through sixteen are procedurally

14  barred. A state court's refusal to hear the merits of a claim because of the petitioner's failure

15  to follow a state procedural rule is considered a denial of relief on an independent and

16  adequate state ground. <u>See</u> <u>Harris v. Reed</u>, 489 U.S. 255, 260-61 (1989). The state rule for

17  these purposes is only "adequate" if it is "firmly established and regularly followed." <u>Ford v.</u>

18  <u>Georgia</u>, 498 U.S. 411, 424 (1991); <u>see also</u> <u>Bennett v. Mueller</u>, 322 F.3d 573, 583 (9th Cir.

19  2003) ("[t]o be deemed adequate, the state law ground for decision must be well-established

20  and consistently applied."). The state rule must also be "independent" in that it is not

21  "interwoven with the federal law." <u>Park v. California</u>, 202 F.3d 1146, 1152 (9th Cir. 2000)

22  (citing <u>Michigan v. Long</u>, 463 U.S. 1032, 1040-41 (1983)). Furthermore, procedural default can

23  only block a claim in federal court if the state court, "clearly and expressly states that its

24  judgment rests on a state procedural bar." <u>Harris</u>, 489 U.S. at 263. This means that the state

25  court must have specifically stated that it was denying relief on a procedural ground. <u>See</u> <u>Ylst</u>

26  <u>v. Nunnemaker</u>, 501 U.S. 797, 803 (1991); <u>Acosta-Huerta v. Estelle</u>, 7 F.3d 139, 142 (9th Cir.

27  1993).

28  Nevertheless, even if the state rule is independent and adequate, the claim may be

reviewed by the federal court if the petitioner can show: (1) cause for the default and actual prejudice as a result of the alleged violation of federal law; or (2) that failure to consider the claims will result in a fundamental miscarriage of justice. See Coleman, 501 U.S. at 750.

Here, the state court cited In re Clark to apply the Dixon rule to deny the claims in the petition.[4] Dixon states that:

> [t]he general rule is that habeas corpus cannot serve as a substitute for an appeal, and, in the absence of special circumstances constituting an excuse for failure to employ that remedy, the writ will not lie where the claims errors could have been, but were not, raised upon a timely appeal from the judgment of conviction.

41 Cal. 2d at 759. Thus, pursuant to Dixon, a California court will not review the merits of a claim in a state habeas proceeding if it could have been raised in a timely appeal but was not.

c.      Analysis

(1)      Is the Dixon Rule an Adequate State Ground?

The Supreme Court explained that "a discretionary rule can serve as an adequate ground to bar federal habeas review," and that a rule may be adequate "even if the appropriate exercise of discretion may permit consideration of a federal claim in some cases but not others." Beard v. Kindler, 130 S. Ct. 612, 618 (2009); see also Martin, 131 S. Ct. at 1128-29. As the Supreme Court recently observed in Martin, 131 S. Ct. at 1130, "[d]iscretion enables a court to home in on case-specific considerations and to avoid the harsh results that sometimes attend consistent application of an unyielding rule." Such discretion is applicable to the Dixon rule because a state court may find that special circumstances excuse a petitioner's failure to raise a ground on appeal. See, e.g., Fleeman v. Castro, 2009 U.S. Dist. LEXIS 1278, 2009 WL 33241, at *7 (E.D. Cal. Jan. 6, 2009) (the Dixon rule is "discretionary in that it admits of the possibility for exceptions for 'special circumstances constituting an excuse' for failure to raise a claim by way of direct appeal and when such circumstances are found, the California Supreme Court may entertain the claim"); Jones v. Ayers, 2008 U.S. Dist.

---

[4] In re Clark discusses several different state procedural bars. Based on the language and reasoning used by the state court in denying Petitioner's habeas petition it is clear that the court in citing to In re Clark was relying on the Dixon rule.

LEXIS 26772, 2008 WL 906302, at *28 (E.D. Cal. Mar. 31, 2008) (finding the Dixon rule to be discretionary because, as set forth in Park, 202 F.3d at 1152, the California Supreme Court explained in Harris that exceptions are applicable to the Dixon rule that admit the possibility that the California Supreme Court may entertain a claim not raised on direct appeal). Accordingly, the Court may look to the Supreme Court's recent decision in Martin for guidance in evaluating the adequacy of the state courts' application of the Dixon rule. See, e.g., Lee v. Mitchell, 2012 U.S. Dist. LEXIS 83503 (C.D. Cal. May 1, 2012); Jensen v. Hernandez, 2012 U.S. Dist. LEXIS 45673, 2012 WL 1130599, at *11-12 (E.D. Cal. Mar. 30, 2012) (citing Martin in considering, in part, a Dixon bar); Peyton v. Lopez, 2012 U.S. Dist. LEXIS 50350, 2012 WL 1203484, at *7 (C.D. Cal. Feb. 22, 2012) (same).

Second, to be "adequate," the procedural rule in question must be "firmly established and regularly followed." Martin, 131 S.Ct. at 1127 (citing Kindler, 130 S.Ct. at 618). "In determining the adequacy of the procedural bar, state cases applying the procedural bar after the time of the petitioner's default are irrelevant." Bennett v. Mueller, 364 F. Supp. 2d 1160, 1167 (C.D. Cal. 2005). Here, Petitioner has not presented evidence regarding the regular application of the procedural bar either before or after filing his petition.

The United States Supreme Court has made it clear that a state procedural rule can serve as an adequate bar to federal habeas review "even if the appropriate exercise of discretion may permit consideration of a federal claim in some cases but not others." Kindler, 130 S. Ct. at 618; see also Martin, 131 S. Ct. at 1128, 1129 ("We see no reason to reject California's time bar simply because a court may opt to bypass the [untimeliness] assessment and summarily dismiss a petition on the merits, if that is the easier path."). Moreover, as Judge Kozinski recently noted, there is no "existing Ninth Circuit precedent holding that the Dixon rule is inadequate." Cree v. Sisto, 2011 U.S. Dist. LEXIS 3648, 2011 WL 66253, at *2 (E.D. Cal. Jan 7, 2011) (Kozinski, J., sitting by designation).

The Court finds that the evidence reflects that the Dixon rule was well established and regularly followed in the time leading up to Petitioner's default.

1

(2)     Is the Dixon Rule an Independent State Ground?

2       Prior to 1998, the <u>Dixon</u> rule was determined to not be independent of federal law. <u>See</u>

3   <u>Park</u>, 202 F.3d at 1152-53. In <u>Park</u>, the Ninth Circuit reasoned that application of the <u>Dixon</u>

4   rule necessarily was interwoven with federal law because there was a fundamental

5   constitutional error exception to the <u>Dixon</u> rule under state law. <u>See id.</u> at 1152-53. However,

6   in <u>In re Robbins</u>, 18 Cal. 4th 770 (1998), the California Supreme Court held "that henceforth

7   California courts would no longer determine whether an error alleged in a state petition

8   constituted a federal constitutional violation." <u>See</u> <u>Bennett</u>, 322 F.3d at 581. In <u>Bennett</u>, the

9   Ninth Circuit held, "we respect the California Supreme Court's sovereign right to interpret its

10   state constitution independent of federal law" and, as a result found California untimeliness

11   rule was independent. <u>See</u> <u>id.</u> at 581-83. Thus, under these particular circumstances, the

12   California Supreme Court's invocation of <u>Dixon</u> in October 2008 after <u>Robbins</u> was decided

13   would also be an independent state ground. <u>See id.</u> at 582-83; <u>see also</u> <u>Park</u>, 202 F.3d at

14   1153 n. 4 (9th Cir. 2000). <u>See</u> <u>Cree v. Sisto</u>, Civ. No. 08-487, 2011 U.S. Dist. LEXIS 3648,

15   2011 WL 66253, at *2 (E.D. Cal. Jan 7, 2011) (Kozinski, J., sitting by designation); <u>see also</u>

16   <u>Rhodes v. Uribe</u>, 2012 U.S. Dist. LEXIS 36921, 2012 WL 928434, at *4 (C.D. Cal. Feb. 10,

17   2012) (finding that the <u>Dixon</u> rule was independent and adequate); <u>Cantrell v. Evans</u>, 2010

18   U.S. Dist. LEXIS 35955, 2010 WL 1170063, at *13-14 (E.D. Cal. Mar. 23, 2010) (same)

19   (McKeown, J., sitting by designation); <u>Lee v. Mitchell</u>, 2012 U.S. Dist. LEXIS 83503 (C.D. Cal.

20   May 1, 2012) (same).

21

(3)     Relief from Procedural Default

22       As the Dixon rule is an independent and adequate state ground, Petitioner's claims

23   seven through sixteen are deemed procedurally defaulted unless Petitioner can show cause

24   for the default and actual prejudice as a result of the alleged violation of federal law or that

25   failure to consider the claims will result in a fundamental miscarriage of justice. <u>See</u> <u>Coleman</u>,

26   501 U.S. at 750. Petitioner makes no argument to overcome this procedural default.

27   Accordingly, Petitioner's claims seven through sixteen are denied as procedurally defaulted.

28

5.      <u>Claim 1 - Ineffective Assistance: Failure to Investigate</u>

1      Petitioner claims that trial counsel was ineffective for failing to investigate in preparation

2 for trial. (1st Am. Pet. at 25.) Specifically, Petitioner asserts that despite telling counsel that

3 witnesses were not telling the truth and providing counsel a list of witnesses, counsel failed

4 to interview relevant witnesses. (Id. at 31-32.)

5      Counsel has a general duty to make reasonable investigations or to make a reasonable

6 decision that makes particular investigations unnecessary. Strickland, 466 U.S. at 691; Avila

7 v. Galaza, 297 F.3d 911, 924 (9th Cir. 2002); Hendricks v. Calderon, 70 F.3d 1032, 1035 (9th

8 Cir. 1995) (counsel is required to conduct a reasonable investigation enabling him to make

9 informed decisions). Where an attorney has consciously decided not to conduct further

10 investigation because of reasonable tactical evaluations, counsel's performance is not

11 constitutionally deficient. Leavitt v. Arave, 646 F.3d 605, 609 (9th Cir. Idaho 2011); see also

12 Cullen v. Pinholster, 131 S. Ct. 1388, 1406-07 (2011). And "[a] decision not to investigate thus

13 'must be directly assessed for reasonableness in all the circumstances.'" Wiggins v. Smith,

14 539 U.S. 510, 533 (2003) (quoting Strickland, 466 U.S. at 691); Babbitt, 151 F.3d at 1173-74.

15 The reasonableness of counsel's conduct must be examined "as of the time of counsel's

16 conduct." Strickland, 466 U.S. at 690.

17      Petitioner's complaints were addressed in his January 10, 2005 Marsden hearing. (See

18 Pet., Ex. C.) First, with regard to the 1992 incident, trial counsel, Mr. Boyce, explained that he

19 and his investigator went to Bodfish and talked to the children whom Petitioner claimed were

20 allegedly present during the incident and counsel concluded that they were "worthless" to the

21 defense. (Id. at 321-22.) Second, as to Victoria, trial counsel confirmed that he and his

22 investigator had repeatedly talked to all of the children except for Victoria because neither the

23 defense nor the prosecution could find her despite their best efforts. (Id. at 320, 324-25; see

24 also Pet., Ex. E, at 605-09 (discussion of counsel's difficulties in locating Victoria); Lodged

25 Doc. 3, at 605-09, 1504-05 (confirmation that the prosecution and defense were actively

26 looking for Victoria).) Third, as to Petitioner's employer, counsel determined that he did not

27 have to track down and exhaust the entire list of truckers at Petitioner's company because his

28 investigations indicated that matters in dispute did in fact happen. (Pet. Ex. C, at 323.)

In general, counsel was frustrated during discovery as after performing discovery and questioning defendant regarding critical facts, defendant was uncooperative. For example, counsel explained at the <u>Marsden</u> hearing that he was getting the "runaround" by his client:

> Sure he gave me a list of people that I can investigate but I don't want to waste my time with it. We could have saved us not going down to Bodfish if we knew from my own client about his past history with his own children was. We didn't know that before we went down there. We found out when we got back. Now I find out they are worthless.
>
> We've had some issues where he's told me one thing about the L.J. matter, about a truck trip. I found out from my investigator all the statements he made to me up to this point regarding that now is, well, no, now I remember that that did happen. Instances like that are prevalent throughout my interviews with him where I run into this. I'm investigating something. I'm going down a lead and then I confront him with what we found in our investigation and, bam, oh, well, yeah, it is kind of that way.
>
> ...
>
> And I confronted him with these photographs and I come to this point where, well, maybe I took these photos. I don't remember. And he's even gone so far as to say, well, you tell me. You're my defense attorney.
>
> I can't work under that kind of condition. I can't work under the kind of conditions where I've got my investigator and myself going down to Bodfish for a day and we could have saved that investigation where I am told to investigate an entire list of truckers and have my investigator trying to track these people that are on truck that work for the trucking company he worked for and finding out that, oh, wait, this did happen on this one truck trip. So I don't need to waste my time with all the truckers.

(Pet. Ex. C, at 322-23.)

At the conclusion of the lengthy hearing, the court found:

> The bottom line in this case is that it isn't even close. Mr. Boyce is providing, in this Court's assessment of what's been told, a very good representation. He has thoroughly investigated the case, personally going to different locations, different towns, personally taking photographs, talking to witnesses, interviewing witnesses, sending investigators to different locations. It sounds like a very thorough job of investigation.

(<u>Id.</u> at 336.)

The state court's determination that counsel conducted a reasonable investigation and was providing Petitioner good representation appears reasonable in light of the testimony of counsel and Petitioner at the <u>Marsden</u> hearing. Here there is no opinion from the state court regarding the present claim. However, determining whether a state court's decision resulted

1   from an unreasonable legal or factual conclusion,"does not require that there be an opinion

2   from the state court explaining the state court's reasoning." Harrington, 131 S. Ct. at 784-85.

3   "Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's

4   burden still must be met by showing there was no reasonable basis for the state court to deny

5   relief." Id. Here, the state court's decision to deny Petitioner's claim of ineffective assistance

6   of counsel was reasonable. Petitioner must show that "there is a reasonable probability that,

7   but for counsel's unprofessional errors, the result ... would have been different." Strickland,

8   466 U.S. at 694. While Petitioner believes that counsel did not perform a thorough enough

9   investigation, trial counsel did interview many witnesses and described why he thought that

10  is was not worthwhile to interview others. It is not reasonable to believe that had counsel

11  continued to do further discovery, he could have presented the jury with facts that would result

12  in a different decision. The state court's rejection of the claim was neither contrary to nor an

13  unreasonable application of Strickland. See Harrington, 131 S. Ct. at 785-86. Petitioner's claim

14  of ineffective assistance of counsel is without merit.

15          6.      Claim 2 - Ineffective Assistance: Conflict of Interest

16          Next, Petitioner contends that his trial attorney had a conflict of interest based on: 1)

17  his dislike of Petitioner; 2) counsel "worked for the Alternative Defense Office which is part of

18  Barker and Associates" and these organizations previously represented witnesses who were

19  members of Kayla's family; and 3) counsel said he liked the victim L.J. (1st. Am. Pet. at 33.)

20          "In order to demonstrate a violation of his Sixth Amendment rights, a defendant must

21  establish that an actual conflict of interest adversely affected his lawyer's performance." Cuyler

22  v. Sullivan, 446 U.S. 335, 350 (1980). The mere possibility of a conflict, however, is

23  insufficient. Id.; Mickens v. Taylor, 535 U.S. 162, 173 (2002). The Ninth Circuit has found that

24  the Sixth Amendment is not violated "when a defendant is represented by a lawyer free of

25  actual conflicts of interest, but with whom the defendant refuses to cooperate because of

26  dislike or distrust. Plumlee v. Masto, 512 F.3d 1204, 1211 (9th Cir. 2008). In the absence of

27  any record evidence as to the existence of an actual conflict of interest, a district court is

28  correct to reject a claim of conflict. Morris v. California, 966 F.2d 448, 456 (9th Cir. 1992).

Here, Petitioner merely complains that his trial attorney, did not "like" him, was associated with attorneys who had represented members of Kayla's family, and said he liked L.J. Counsel had no obligation to like his client; he just has to provide effective representation that is free of an actual conflict that adversely affects his performance. The superior court expressly found at the <u>Marsden</u> hearing that counsel was providing "very good representation." (Pet., Ex. C at 326.) Furthermore, Petitioner has failed to prove, through a factual showing on the record, that any alleged conflict adversely affected counsel's performance. Petitioner contends that there was a conflict based on the Alternative Defense Office where counsel worked also representing members of Kayla's family, but has not described what testimony the witnesses would have provided had counsel presented them at trial as they were not direct witnesses to the crime. Finally, as to L.J., counsel explained:

> When I say I like L.J., he's not a bad kid. I got no problem with the kid. It doesn't mean I don't think he's lying or whether or not it happened or not. But, generally, he seems like a decent enough kid. I talked to him several times. We're trying to at one time or another get him to finally say, oh, it's a big lie. But we keep going back with more points.

(Pet., Ex. C at 224-25.) It appears, even though Counsel described L.J. as a "good kid," he interviewed L.J. several times, and was provided consistent testimony regarding Petitioner's conduct. The Court does not observe that actual conflict of interest adversely affected counsel's performance. Counsel performed significant investigation, and Petitioner has not shown that his investigation was hindered or affected by a direct conflict of interest. The state court's rejection of the claim was neither contrary to nor an unreasonable application of Federal law. Petitioner's claim of ineffective assistance of counsel based on conflict of interest is without merit.

### 7.   Claim 3 - Ineffective Assistance: Failure to Call Witnesses

Petitioner contends that "trial counsel was ineffective in calling and subpoenaing witnesses critical to the defense and expert witnesses." (1st Am. Pet. at 25, 24-37.) Petitioner presents several arguments regarding counsel's failure to: 1) use police reports, 2) subpoena witnesses from the 1992 incident, 3) investigate that Petitioner was physically unable to reach behind him and rub Kayla, 4) show that all of Petitioner's neighbors knew he was a sex

1  offender, 5) establish that the victims' families were on probation or parole, 6) use Kayla's

2  mother's letters, 7) use information that Kayla's mother was arrested for refusing to have Kayla

3  talk to the prosecutor, 8) show that Kayla's sister was also arrested, and 9) show that

4  Petitioner had reported L.J.'s family. (Id.)

5          As described above, counsel was reasonably diligent in conducting an investigation to

6  determine how best to present a defense. In presenting the defense, despite Petitioner's

7  disagreement regarding the strategy used, counsel made strategic decisions within the "wide

8  range of professionally competent assistance." Strickland, 466 U.S. at 688, 690. "There are

9  countless ways to provide effective assistance in any given case. Even the best criminal

10 defense attorneys would not defend a particular client in the same way." Id. at 689. After

11 thoroughly investigating the case, counsel made reasonable decisions as to which evidence

12 and witnesses to use in his defense. These decisions resulted in Petitioner being acquitted of

13 count I and the jury being deadlocked on counts IV, V and VI. (See Lod. Doc. 1, at 305, 311.)

14 Petitioner's "disagreement with counsel's tactical decisions does not provide the basis for

15 declaring that the representation was constitutionally deficient." Raley v. Ylst, 470 F.3d 792,

16 799 (9th Cir. 2006). The state court's rejection of the claim was neither contrary to nor an

17 unreasonable application of Strickland. See Harrington, 131 S. Ct. at 785-86. Petitioner's claim

18 of ineffective assistance of counsel is without merit.

19               8.    Claim 4 - Ineffective Assistance: Chronic Standard

20         Petitioner appears to argue that the presumed prejudice standard set forth in United

21 States v. Cronic, 466 U.S. 648 (1984) should apply because counsel "helped convict"

22 Petitioner and failed to defend him as discussed in Petitioner's other claims of ineffective

23 assistance of counsel. (1st Am. Pet. at 26, 38-39.) Petitioner's claim is without merit.

24         The Supreme Court has identified three situations in which prejudice may be presumed:

25              First and "[m]ost obvious" was the "complete denial of counsel." [Cronic],
   at 659, 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657. A trial would be
26              presumptively unfair, we said, where the accused is denied the presence of
   counsel at "a critical stage," id., at 659, 662, 466 U.S. 648, 104 S.Ct. 2039, 80
27              L.Ed.2d 657, a phrase we used in Hamilton v. Alabama, 368 U.S. 52, 54, 82
   S.Ct. 157, 7 L.Ed.2d 114 (1961), and White v. Maryland, 373 U.S. 59, 60, 83
28              S.Ct. 1050, 10 L.Ed.2d 193 (1963) (per curiam), to denote a step of a criminal

proceeding, such as arraignment, that held significant consequences for the accused. [Footnote omitted.] Second, we posited that a similar presumption was warranted if "counsel entirely fails to subject the prosecution's case to meaningful adversarial testing." Cronic, supra, at 659, 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657. Finally, we said that in cases like Powell v. Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932), where counsel is called upon to render assistance under circumstances where competent counsel very likely could not, the defendant need not show that the proceedings were affected. Cronic, supra, at 659-662, 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657.

Bell v. Cone, 535 U.S. 685, 695-96 (2002).

Here, none of the three situations described by the Supreme Court apply to the instant case. First, Petitioner was plainly afforded counsel. Second, counsel did not entirely fail to subject the prosecution to meaningful adversarial testing. Indeed, he cross-examined each of the prosecution witnesses. (See Lodged Doc. 3, at 1521, 1548, 1555, 1575, 1621, 1635, 1648, 1666, 1710, 1786, 1826.) Thereafter, he presented the testimony of twelve witnesses. (Lodged Doc. 3, at 1838, 1851, 1860, 1866, 1924, 1965, 1997, 2013, 2027, 2038, 2040, 2046, 2062, 2115.) Third, the instant case does not at all resemble the circumstances set forth in Powell v. Alabama, 287 U.S. 45 (1932). Extraordinary circumstances do not exist that would call into question trial counsel's conduct. The state court's rejection of the claim was neither contrary to nor an unreasonable application of federal law. Petitioner's claim of ineffective assistance of counsel is without merit.

### 9. Claim 5 - Ineffective Assistance: Appellate Counsel

Petitioner's fifth claim of ineffective assistance of counsel is that appellate counsel was ineffective for failing to raise claims regarding the effectiveness of trial counsel. (1st Am. Pet. At 26, 40.) Instead, appellate counsel focused on Petitioner's lack of intent to aid or abet in the commission of the crime.

Where the challenge is to the effective assistance of appellate counsel, the Strickland standard apply in the same manner as claims of ineffective assistance of trial counsel. Smith v. Robbins, 528 U.S. 259, 285 (2000). Moreover, in Smith, the United States Supreme Court indicated that an appellate attorney filing a merits brief need not and should not raise every non-frivolous claim. Smith v. Robbins, 528 U.S. at 288. Rather, an attorney may select from among them in order to maximize the likelihood of success on appeal. Id. To establish

1   ineffectiveness of appellate counsel, the petitioner must demonstrate that "a particular

2   nonfrivolous issue was clearly stronger than issues that counsel did present." Id. This is so

3   because appellate counsel has no constitutional obligation to raise every non-frivolous issue

4   "but rather may select from among them in order to maximize the likelihood of success on

5   appeal." Id.; Jones v. Barnes, 463 U.S. 745, 751 (1983). Indeed, the Supreme Court

6   recognized that "since time beyond memory" experienced advocates "have emphasized the

7   importance of winnowing out weaker arguments on appeal and focusing on one central issue

8   if possible, or at most on a few key issues." Jones, 463 U.S. at 751-52; Pollard v. White, 119

9   F.3d 1430, 1435 (9th Cir. 1997) (a "hallmark of effective appellate counsel" is to avoid

10  "throwing in a kitchen sink full of arguments with the hope that some argument will persuade

11  the court.").

12      Counsel need not appeal every possible question of law at the risk of being found to

13  be ineffective. Gustave v. United States, 627 F.2d 901, 906 (9th Cir. 1980). The exercise of

14  judgment in framing issues on appeal makes it "difficult to demonstrate that [appellate] counsel

15  was incompetent under Strickland for omitting a particular argument." Smith, 528 U.S. at 288.

16  In this case, appellate counsel made a reasonable tactical decision to raise the three claims

17  he asserted on appeal. Further appellate counsel did raise a claim of ineffective assistance

18  of counsel for failing to object to hearsay statements. Appellate counsel had no obligation to

19  raise every issue regarding trial counsel's conduct that Petitioner now asserts.

20      Based on the foregoing, the Court finds that Petitioner has failed to show either

21  deficient performance or prejudice. Accordingly, the Court finds that the state court's rejection

22  of Petitioner's claim was neither contrary to, nor involved an unreasonable application of,

23  clearly established federal law, as determined by the United States Supreme Court. Thus,

24  habeas relief is not warranted on this claim.

25  **V.    RECOMMENDATION**

26      Accordingly, it is hereby recommended that the petition for a writ of habeas corpus be

27  DENIED with prejudice. It is further recommended that the Clerk of Court be directed to enter

28  judgment.

1    This Findings and Recommendation is submitted to the assigned District Judge,

2    pursuant to the provisions of Title 28 U.S.C. § 636(b)(1).  Within fourteen (14) days after being

3    served with the Findings and Recommendation, any party may file written objections with the

4    Court and serve a copy on all parties.  Such a document should be captioned "Objections to

5    Magistrate Judge's Findings and Recommendation."  Any reply to the objections shall be

6    served and filed within fourteen (14) days after service of the objections.  The parties are

7    advised that failure to file objections within the specified time may waive the right to appeal the

8    District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

9

10

11   IT IS SO ORDERED.

12   Dated:    August 10, 2012                    /s/ Michael J. Seng

13                                         UNITED STATES MAGISTRATE JUDGE

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28